UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMANDA R.,

                    Plaintiff,

          -v-                              6:20-CV-596

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ  PETER W. ANTONOWICZ, ESQ.
Attorneys for Plaintiff
148 West Dominick Street
Rome, NY 13440

SOCIAL SECURITY                       MOLLY CARTER, ESQ.
    ADMINISTRATION                    Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION & ORDER**

## I.  INTRODUCTION

On May 29, 2020, plaintiff Amanda R.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides, *inter alia*, that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings.  *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II.  BACKGROUND

On January 15, 2019, plaintiff filed an application for DIB alleging that her bipolar disorder, depression, anxiety, lower back pain, liver lesion,

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.  Although plaintiff has a double surname, at her administrative hearing she indicated a preference for the one beginning with "R."  *See* R. at 32.

irritable bowel syndrome, hypersomnia, diabetes, and arthritic knee pain rendered her disabled beginning on February 2, 2018.  R. at 67, 247, 250.[2]

Plaintiff's claim was initially denied on May 9, 2019, R. at 102–13, and denied again after reconsideration on August 7, 2019, *id*. at 115–26.  At her request, a hearing was held before Administrative Law Judge ("ALJ") John P. Ramos on February 4, 2020.  R. at 32–65.  Plaintiff, represented by attorney Peter Antonowicz, appeared and testified by video from her attorney's office in Rome, New York.  *Id*.  The ALJ also heard testimony from Vocational Expert ("VE") Linda Vause.  *Id*.

Thereafter, the ALJ issued a decision denying plaintiff's application for benefits from February 2, 2018, the alleged onset date, through March 4, 2020, the date of his written decision.  R. at 13–24.  This decision became the final decision of the Commissioner on April 16, 2020, when the Appeals Council denied plaintiff's request for review.  *Id*. at 1–6.

### III.  LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[2] Citations to "R." refer to the Administrative Record.  Dkt. No. 8.

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[3]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable

---

[3]  Section 404.1520 sets forth the five-step evaluation for Disability Insurance Benefits ("DIB").  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work."  § 404.1520(e)–(f).  If so, the claimant is not disabled.  § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy.  § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five.  *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id.*

## IV.  **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since February 2, 2018, the alleged onset date; (2) plaintiff's obesity, diabetes, asthma, and hypersomnia were "severe" impairments within the meaning of the Regulations; and that (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 16–19.

At step four, the ALJ determined that plaintiff retained the RFC to perform a limited range of sedentary work.  R. at 19.  In particular, the ALJ found that plaintiff could:

> perform sedentary work . . . except for the following: the claimant should avoid exposure to concentrated respiratory irritants and extremes of temperature; the claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention/concentration for simple tasks and regularly attend to a routine and maintain a schedule; the claimant is able to related to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks-but she should avoid work requiring more complex interaction, negotiation or joint efforts with coworkers to achieve work goals and she can have no interaction with the public; the claimant is able to make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work; the claimant should work in a position where she is not responsible for the work of or required to supervise others; the claimant should work in a

> position with little change in daily work processes or
> routines.

*Id.*

The ALJ further found that plaintiff had past relevant work as an

"accounting clerk" and a "licensed practical nurse," but that she would not be

able to perform this past work based on the stated RFC finding.  R. at

22.  However, based on the testimony of the VE and a consideration of other

relevant factors, the ALJ determined that plaintiff could still perform work

as an "addresser," a "cutter and paster," and as a "touch up screener."  *Id.* at

23.

Because these representative jobs existed in sufficient numbers in the

national economy, the ALJ concluded that plaintiff was not disabled during

the relevant time period.  R. at 23–24.  Accordingly, the ALJ denied plaintiff's

application for benefits.  *Id.* at 24.

## A.  <u>Plaintiff's Appeal</u>

Plaintiff contends the ALJ (1) failed to properly evaluate her mental

impairments throughout the five-step sequential analysis and (2) improperly

assessed the medical opinion evidence when formulating his RFC at step

four.  Pl.'s Mem., Dkt. No. 13 at 1.[4]

---

[4]  Pagination corresponds to CM/ECF.

1.  **Mental Impairments**

"Where, as here, mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')." *Lake v. Colvin*, 2016 WL 2757750, at *6 (N.D.N.Y. May 12, 2016) (cleaned up). "This technical method helps administrative law judges first determine whether claimants have medically[ ] determinable mental impairments." *Id.* "This technique also enables administrative law judges to determine [ ] whether medically[ ] determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.*

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments. 20 C.F.R. § 404.1520a(b)(1). If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically determinable mental impairment(s). § 404.1520a(b)(2). This involves consideration of "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. § 404.1520a(c)(3).

These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." § 404.1520a(c)(4).  If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d)(1).

A review of the ALJ's narrative discussion reflects that he applied this "special technique."  R. at 16–18.  In brief, the ALJ found that plaintiff suffered from medically determinable "bipolar disorder," analyzed the four broad functional areas, and determined that plaintiff had only "mild" limitation in each one.  *Id*. at 16–17.  Accordingly, the ALJ concluded that plaintiff's bipolar disorder was "nonsevere."  *Id*. at 16.

To reach this result, the ALJ relied primarily on the findings of an examining and two non-examining consultants, each of whom broadly opined that plaintiff had either "none" or only "mild" limitation in any one of the four functional areas.  *See* R. at 17.  Conversely, the ALJ discounted a much more restrictive assessment of plaintiff's mental limitations that was offered by Vijayakumar Kormareth, M.D., one of her treating physicians.  R. at 17–18.  Dr. Kormareth opined that plaintiff "cannot work" at all because she suffers

from "marked" and even some "extreme" limitations in her ability to carry out various mental tasks. *Id.* at 1976–80, 1984–86. Dr. Kormareth also opined that these various limitations would cause plaintiff to be off-task for at least 50% of an eight-hour work day and would cause her to miss more than four days of work each month. *Id.* at 1986.

The ALJ rejected Dr. Kormareth's findings of marked and extreme limitations as "not persuasive," reasoning that his opinions "consist[ ] of generally check boxes" and observing that the "record does not substantiate the extent of the limitations set forth." R. at 18. The ALJ further determined that Dr. Kormareth's findings about the frequency and duration of plaintiff's time off task and absences were "speculative, and not supported by the record." *Id.*[5]

Plaintiff contends the ALJ's analysis of Dr. Kormareth's findings amounts to legal error. Pl.'s Mem. at 18. According to plaintiff, the "ALJ failed to follow the requirement [*sic*] assessment techniques and failed to base his findings on a longitudinal picture of the overall degree of functional limitation." *Id.* In plaintiff's view, the ALJ should have obtained the services of a medical expert to resolve the conflict in the medical opinion evidence. *Id.*

---

[5] As plaintiff correctly notes, the ALJ's written decision says these findings are "*not* speculative," but this is clearly a typographical error when read in context. R. at 18.

Upon review, these arguments will be rejected.  "It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.).  The ALJ appropriately identified just such an evidentiary conflict when applying the special technique: on the one hand, Dr. Kormareth assessed extremely restrictive mental limitations; on the other, the examining and non-examining consultants found only "none" or "mild" mental limitations.

Plaintiff has failed to point out any controlling legal principle that obligated the ALJ to retain a medical expert to help him resolve that evidentiary conflict under the circumstances.  *Cf. Beasock v. Colvin*, 2014 WL 421324, (Sharpe, J., adopting Report & Recommendation of Hines, M.J.) (explaining that under a prior iteration of the Regulations an ALJ "has discretion as to when it is necessary to call a medical expert").

And for the reasons explained at length in the Commissioner's brief, the ALJ was entitled to resolve that conflict by relying on the consultants' opinions, which were consistent with each other and with the rest of the medical record.  *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J., adopting Report & Recommendation of Bianchini, M.J.) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such

consultants are deemed to be qualified experts in the field of social security disability.").  Accordingly, these arguments will be rejected.[6]

## 2.  **Medical Opinion Evidence**

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

---

[6] Importantly, an "RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order).  Although the ALJ found that plaintiff's bipolar disorder was "nonsevere," he nevertheless included various mental limitations in his RFC finding at step four.  R. at 19.  The ALJ did not, however, include the "inability to reliably attend work or be excessively off task due to concentration deficits."  Pl.'s Mem. at 13.  The ALJ's treatment of those opinions will be discussed *infra*.

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

Historically, the Regulations divided evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[7]  Under this category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).  This came to be known as the "treating physician rule." *Id.*

---

[7]  A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources.[8]  Under the new regime, "no particular deference or special weight is given to the opinion of a treating physician."  *Quiles v. Saul*, 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021). Instead, an ALJ is now obligated to evaluate the persuasiveness of "all of the medical opinions" based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship[9] with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors "that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The most important of these factors are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Although the Regulations obligate the ALJ to explain how he or she considered these two specific factors, "an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly."  *Dany Z. v. Saul*, –F. Supp. 3d–, 2021

---

[8]  The new Regulations apply to claims filed on or after March 27, 2017.  Because plaintiff's claim was filed on January 15, 2019, the new Regulations govern this appeal.

[9]  This "relationship" factor includes (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

WL 1232641, at *9 (D. Vt. Mar. 31, 2021); *see also* §§ 404.1520c(b)(2),

416920c(b)(2).

As an initial matter, plaintiff argues that these new Regulations did not

validly eliminate the "treating physician" rule because it "was enunciated by

the Second Circuit before [being] incorporated in the regulations."  Pl.'s Mem.

at 20.  In plaintiff's view, the treating physician rule "remains applicable

despite the conceptual change from an assessment of weight to that of

persuasiveness."  *Id*. at 21.

Upon review, this threshold argument about the validity of the new

Regulations must be rejected.  "Multiple courts have considered similar

arguments as the new regulations become more widely applied, and all have

upheld the validity of the Commissioner's elimination of the treating

physician rule and implementation of the new regulations."  *Tasha W. v.

Comm'r of Soc. Sec.*, 2021 WL 2952867, at *6 (N.D.N.Y. July 14, 2021)

(Dancks, M.J.) (collecting cases).

Importantly, the new Regulations do not amount to much of a change in

terms of the analysis itself.  As Judge Baxter recently explained:

> Consistency and supportability were as important
> under the previous regulations as they are in the new
> regulations because "consistency" with evidence in the
> record was always considered when determining
> whether "controlling" weight was going to be given to
> a treating physician's opinion, before any of the other
> factors were considered.  The new regulations restate

> the factors which have always been used in considering any medical opinion. A treating physician's opinion may still be more persuasive because he or she will have examined the plaintiff more frequently and will presumably have a more substantial relationship with the patient. Thus, although there is no "special" deference given, the treating relationship is one of the factors to be considered in the analysis under the new regulations.

*Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at * (N.D.N.Y. Mar. 30, 2021) (Baxter, M.J.).

In other words, although "ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)). Accordingly, plaintiff's challenge to the validity of the revised Regulations must be rejected.

Next, plaintiff contends that the ALJ's RFC finding should have included the more restrictive limitations assessed by her various treating providers. Pl.'s Mem. at 20–24. Plaintiff also contends that the ALJ should not have relied on her ability to complete "ill-defined and isolated activities" when formulating his RFC. *Id.* at 23–24.

The medical component of the ALJ's RFC analysis relies primarily on the opinions of consultative examiner Trevor Litchmore, M.D. and non-examining consultant C. Krist, D.O.  R. at 21.  These two consultants offered opinions about plaintiff's physical functioning.  *Id*.  Dr. Krist opined that plaintiff could handle the exertional demands of sedentary work with some environmental limitations.  *Id*.  Dr. Lichtmore opined in a broadly similar fashion.  *Id*.  As relevant here, the ALJ concluded that both Dr. Krist and Dr. Lichtmore's opinions were "persuasive" and "consistent with" the overall record.  *Id*.

However, the ALJ discounted the opinions from two of plaintiff's treating sources.  R. at 21–22.  First, William Jorgensen, D.O., one of plaintiff's treating physicians, opined that plaintiff "would be off task 10% or more in an 8 hour day" and "would miss more than 4 days of work per month."  *Id*. at 22.  Second, Deborah Cardinal, RPA-C, another of plaintiff's treating providers, opined that plaintiff "would be absent more than 4 days per month."  *Id*.  The ALJ concluded that these opinions about time off-task and absenteeism were "speculative and not supported with an explanation."  *Id*.

Upon review, plaintiff's challenge to the ALJ's RFC finding must be rejected.  As explained *supra*, the opinion of a claimant's treating physician was and is of central importance in the disability determination.  However, the ultimate question of whether a claimant is disabled under the Act is an

administrative determination reserved to the Commissioner.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The analytical difficulty presented by this argument comes from the fact that neither of these particular findings can be readily confirmed or dispelled just by examining treatment notes or objective criteria.  Instead, these conclusions about plaintiff's ability to function during the work day (and to show up to work at all)[10] rest in some substantial part on the black box of the treating providers' experience with plaintiff's various conditions.

However, that does not mean that these topics are shielded from scrutiny in the disability analysis.  "The ability to maintain a regular schedule falls under the category of concentration and persistence."  *Andrea N. v. Saul*, 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020) (Hummel, M.J.) (cleaned up).  Thus, one place an ALJ can look to analyze this issue is to other opinions in the record that examine the overall severity of a claimant's mental impairments in the relevant functional area.  *Tamara M. v. Saul*, 2021 WL 1198359, at *9 (N.D.N.Y. Mar. 30, 2021) (Hummel, M.J.) (rejecting similar argument about time off-task and absenteeism where ALJ contrasted treating provider's conclusions of "marked" limitations in these areas with "mild to moderate" findings by other providers).  Another place an ALJ can

---

[10] As the Vocational Expert opined at the hearing, being off-task more than 15% of an eight-hour day and missing more than one day of work per month would make a claimant "unemployable."  R. at 62.

look is to a claimant's activities of daily living, which sometimes shed light on the ability to make and keep a routine and/or a daily schedule.  *Cf. Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018).

The ALJ examined all of these avenues.  First, the ALJ correctly noted that both Dr. Jorgensen and PA Cardinal's off-task and absenteeism findings appear to be *ipse dixits* rather than supported with a clear record-based explanation.  Second, as discussed at length *supra*, the ALJ applied the "special technique" earlier in his sequential analysis to reach a series of reasonable, legally supportable conclusions about the relatively "mild" mental limitations caused by plaintiff's bipolar disorder.  Third, the ALJ contrasted Dr. Jorgensen and PA Cardinal's off-task and absenteeism findings with plaintiff's self-reported ability to perform a fairly wide range of activities of daily living, including homeschooling her son.  R. at 21–22.

The ALJ relied on these and other factors to formulate an RFC that limited plaintiff to sedentary work with additional mental limitations, such as requiring only the ability to understand and follow simple instructions and complete simple tasks, to have no interaction with the public, and to work only in positions with little change in a daily work routine.  Courts have held that the inclusion of these kind of mental restrictions in an RFC finding are sufficient to account for a claimant's limitations in the ability to perform activities within a schedule and to maintain regular attendance.  *Andrea N.*,

2020 WL 1140512, at *5–*6 (collecting cases).  Accordingly, this argument will also be rejected.

## IV.  **CONCLUSION**

The ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  August 17, 2021
　　　 Utica, New York.